**IN THE UNITED STATES DISTRICT COURT IN THE DISTRICT OF KANSAS,
AT TOPEKA, KANSAS**

| | | |
|---|---|---|
| **GRACE HWANG,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE STATE OF KANSAS, and** | ) | **Case No.:   5:11-cv-04185** |
| | ) | **EFM-KMH** |
| | ) | |
| **KANSAS STATE UNIVERSITY,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Grace Hwang brings this action asserting claims under the Rehabilitation Act of 1973, 29 U.S.C § 794 *et sec*. (RA). Ms. Hwang alleges that her employer, Kansas State University (The University), discriminated against her because of her disability when it forced her to resign rather than allow her the extended leave that she needed after her cancer treatment, including a bone marrow transplant. Ms. Hwang further alleges that The University retaliated against her for asserting her disability rights and for filing a discrimination complaint. Ms. Hwang seeks declaratory and injunctive relief, as well as compensatory damages as provided in section 504 of the RA. In support of her complaint, plaintiff alleges as follows:

## PARTIES

1.      The Plaintiff, Grace Hwang, is a resident of Manhattan, Kansas in Riley County.

2.      Ms. Hwang is a qualified individual with a disability under the RA.

3.      The Defendant, Kansas State University, is a state institution that receives federal funds and is therefore subject to the RA.

**JURISDICTION AND VENUE**

4.      This court has federal question jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

5.      Venue is proper under 28 U.S.C. § 1319(b), because all of the unlawful acts and practices alleged in this complaint were committed within the State of Kansas.

**STATEMENT OF FACTS COMMON TO ALL CLAIMS**

6.      At all times relevant to this complaint, Ms. Hwang was disabled as defined under the RA.

7.      At all times relevant to this complaint, Ms. Hwang was being treated for breast cancer and leukemia, which included chemotherapy and a bone marrow transplant.

8.      As a result of the above, Ms. Hwang suffered from a compromised immune system which substantially limited her in her ability to care for herself, fight infection, and to interact with others.

9.      At all times relevant to this complaint, The University knew that Ms. Hwang was disabled.

10.      Ms. Hwang requested from The University accommodation for her disabilities but was denied such accommodation.

**Ms. Hwang's History With The University**

11.      Ms. Hwang, a Fulbright Scholar, graduated with honors from Kansas State University, received a graduate degree at Tufts University, and a law degree from Georgetown University Law Center.

2

12.     She was employed at The University, from the fall of 1994 until February of 2010.

13.     Ms. Hwang was first employed as an adjunct professor in The University's MBA program, then on January 1, 2005, as an assistant professor in The University's School of Leadership Studies.

14.     Although Ms. Hwang was employed on a year to year contract, it is the policy and practice of The University to renew such contracts as a matter of course unless the employee is discharged for cause.

15.     Throughout her years at The University, Ms. Hwang consistently received praise and high evaluations from both supervisors and students.

16.     Ms. Hwang has a reputation for being highly involved with, and available to, her students.

## Ms. Hwang's Disability and Discriminatory Treatment

17.     In 2005, Ms. Hwang was diagnosed with breast cancer.

18.     As a result, Ms. Hwang required surgery, chemotherapy and radiation treatment.

19.     Ms. Hwang missed less than 3 weeks of work due to her illness, after which she resumed her full teaching load uninterrupted.

20.     However, on June 23, 2009, Ms. Hwang became critically ill and was diagnosed with leukemia.

21.     Her physicians concluded that Ms. Hwang's survival depended upon an aggressive course of chemotherapy as well as a bone marrow transplant.

22.     Ms. Hwang's brother's bone marrow proved to be an acceptable match and she immediately received her transplant.

23.     After the transplant, Ms. Hwang's compromised immune system and continuing course of chemotherapy required that she spend three months at KU Medical Center, and another three months at Hope Lodge, an inpatient cancer facility.

24.     At this time, Ms. Hwang had accumulated about 2 months of leave time, which she intended to apply to her extended absence.

25.     Her accumulated leave would be exhausted sometime in December, but Ms. Hwang received several offers from coworkers to donate their own accumulated leave through a University program known as "shared leave."

26.     Ms. Hwang advised her supervisor, Dr. Tolar, and The University of her diagnosis and her need for medical leave.

27.     Ms. Hwang explained that she planned to supplement her accumulated leave with donated shared leave, to cover the time off that she required for treatments and rehabilitation.

28.     During her treatment and recovery, Ms. Hwang's three assigned classes were covered by two substitute instructors. One was a former student, the other a local minister.

29.      Ms. Hwang prepared her substitutes by sharing her teaching materials, lesson plans, and syllabi with them.

30.     Throughout her illness and hospitalization, Ms. Hwang spent considerable time giving advice and assistance to her substitute instructors.

31.      This included responding to the substitutes' numerous phone calls and emails.

32.     Unbeknownst to Ms. Hwang, The University intended to fire her and replace her with the very same instructors she was assisting while she was in the hospital.

33.     Ms. Hwang's physicians released her from inpatient care on November 21, 2009.

34.    But due to a severe outbreak of H1N1 virus at The University, her physicians ordered that she take additional time away from the campus so as not to endanger her already compromised immune system.

35.    After receiving this news, Ms. Hwang contacted The University, including her supervisor, Dr. Tolar, the Director of Leadership Studies and explained that she would require additional leave, perhaps through the spring semester.

36.    Ms. Hwang explained that she intended to return for the summer semester and would teach on-line, as she had for the past three summers.

37.    Ms. Hwang was unconcerned about the additional leave because Monica Strathman, the business manager for her department, informed Ms. Hwang that she had 1 year of shared leave at her disposal. This would more than cover any additional leave that she might require.

38.    At the same time (December, 2009), The Human Resources Department (HR) contacted Ms. Hwang and advised her to apply for long term disability benefits (LTD).

39.    HR led Ms. Hwang to believe that the purpose of applying for LTD was to insure that she would continue to receive benefits in the event that she was unable to return by the summer of 2010 as planned.

40.    On February 10, 2010, Ms. Hwang received a call from Stephanie Harvey (HR), informing Ms. Hwang that as of February 17th, she would be receiving LTD, and that she would also be responsible for her health insurance premium of $1,340.00 per month.

41.     Ms. Harvey also told Ms. Hwang, for the first time, that since she accepted LTD, she would be forced to resign and that she was effectively terminated.

42.     On February 11th, the very next day after getting this news from Ms. Strathman, Ms. Hwang contacted several members of The University by email, including Dr. Tolar. She explained that she did not want to resign; that she continued to make medical progress; and that she expected to be able to return to work by the summer semester at the latest.

43.     In that same email, Ms. Hwang asked that she be allowed some kind of accommodation and leave so that she would not be terminated.

44.     On February 19, 2010, Dr. Tolar confirmed Ms. Harvey's previous statements.

45.     Dr. Tolar told Ms. Hwang that she had only two options available to her. These options were that she could resign and accept LTD benefits, which would provide her with a small fraction of her present salary, and exorbitantly expensive health insurance; or she could take leave without pay, immediately lose her health insurance, and be terminated in June, at the end of her yearly contract.

46.     Dr. Tolar specifically denied Ms. Hwang any accommodation that would allow her to keep her job.

47.     Dr. Tolar emphasized that regardless of which option Ms. Hwang chose the result would be termination of her job.

48.     Dr. Tolar further warned Ms. Hwang that if she did not accept the LTD option and termination by the very next day, she would be responsible for paying for her own health insurance.

49.     As a single mother of two, in treatment for her second bout with cancer, Ms. Hwang had no option but to accept LTD.

50.     Consequently, on that same day, February 19th, Ms. Hwang sent an email to Dr. Tolar stating that she would have to take the LTD, since The University gave her no viable option.

51.     Three days later, February 22, 2010, Ms. Hwang received a letter from Stephanie Harvey of HR, stating that her employment had ended effective on February 21, 2010.

52.     A few weeks later, on March 1, 2010, Ms. Hwang attempted to receive her scheduled chemotherapy and her physician's office told her that The University had cancelled her medical insurance.

53.     Although, The University knew of Ms. Hwang's condition and her need for health care, it did not advise Ms. Hwang of her COBRA rights, or give her notice that it would be cancelling her health insurance.

54.     On March 1, 2010, Dr. McGuirk, Director of the Blood and Bone Marrow Transplant Program, sent a letter to The University explaining that the hardship that the cancellation of Ms. Hwang's health insurance caused.

55.     Dr. McGuirk also notified The University that Ms. Hwang could return to her teaching duties for the summer teaching session and that she was in total remission from her leukemia.

56.     Regardless of this information, and because of her disability, The University forced Ms. Hwang to resign.

57.     On March 2, 2010, Ms. Hwang applied to The University, for the position of special assistant to the president for community relations.

58.     Despite her qualifications and credentials, Ms. Hwang was never even interviewed for the position.

59.     The University hired a candidate from Colorado without considering Ms. Hwang for the position.

60.     On, March 8, 2010, Ms. Hwang filed an internal disability discrimination complaint against The University and initiated the grievance process.

61.     On May 18, 2010, after a formal hearing, The University informed Ms. Hwang that it had considered her complaint and concluded that no discrimination had occurred; therefore no further action would be taken.

62.     On June 24, 2011 Ms. Hwang again applied to The University, this time for the position of Interim Associate Provost for International Programs.

63.     Despite her qualifications and credentials, Ms. Hwang was never interviewed for the position.

64.     Again, The University appointed another candidate without considering Ms. Hwang's application.

65.     In October of 2011, Ms. Hwang applied to The University for an open adjunct position in the department of American Ethnic Studies.

66.     This position is for an instructor to teach one class for one semester.  The pay is $3,000.00 and provides no benefits.

67.     Although the director has accepted Ms. Hwang, and Ms. Hwang has signed a contract to teach the class, the dean has not approved her for the position.

68.     The University, through its agents and employees, has intentionally violated Section 504 of the RA in its actions against Ms. Hwang that have been described above.

## CHARGE I: DISCRIMINATION

69.     Ms. Hwang incorporates into this complaint, all of the above paragraphs.

8

70.     The RA prohibits covered entities from discrimination in hiring, pay, and/or other benefits, against any employee because of her disability.

71.     COBRA is a benefit that is mandated and offered to every University employee.

72.     Ms. Hwang was denied COBRA benefits when her health insurance was cancelled on February 21, 2010.

73.     Shared leave is a benefit that The University offers to all eligible employees.

74.     Ms. Hwang was denied the benefit of shared leave when she requested it to cover her required absences in 2010.

75.     The University violated the RA when it denied Ms. Hwang COBRA benefits and shared/extended leave.

76.     Because of her disability, and despite her qualifications, The University failed to consider or hire Ms. Hwang for the open positions stated in her Statement of Facts, above.

77.     The University violated the RA when it failed to consider Ms. Hwang or hire her for the positions for which she applied and was qualified for in 2010.

## CHARGE II: FAILURE TO ACCOMODATE

78.     Ms. Hwang incorporates into this complaint, all of the above paragraphs.

79.     Section 504 of the RA requires covered entities to engage in the interactive process and accommodate employees with disabilities.

80.     Ms. Hwang requested accommodation in the form of extended leave in February of 2010.

81.     The University has a shared leave policy, which allows employees to donate accumulated leave time to seriously ill coworkers.

82.     Ms. Hwang was seriously ill during the relevant time period.

83.     Several employees offered to donate accumulated leave time in such amounts that would more than cover Ms. Hwang's requirements.

84.     The University denied Ms. Hwang's request for the accommodation of extended leave.

85.     The University failed to consider any other accommodation and failed to engage in the interactive process.

86.     The only options that The University provided to Ms. Hwang were to; (a) accept LTD, and a forced resignation, or; (b) to take leave without pay, immediately lose her health insurance, and likewise lose her job in a matter of months.

87.     Ms. Hwang was forced to accept LTD and was constructively fired.

88.     The University failed to accommodate Ms. Hwang in violation of section 504 of the RA.

## CHARGES III AND IV: RETALIATION

89.     Ms. Hwang incorporates into this complaint, all of the above paragraphs.

90.     The RA prohibits covered entities from retaliating against employees for asserting their rights under RA.

91.     Ms. Hwang was entitled to COBRA benefits and shared/extended leave.

92.     The University denied Ms. Hwang COBRA benefits and shared/extended leave.

93.     Ms. Hwang was denied these benefits in retaliation for complaining about disability discrimination and for asserting rights under RA.

94.     After being forced to resign, Ms. Hwang applied to The University for two open full time positions. She was well qualified for both positions.

95.     The University failed to interview or hire her for either of the two positions.

10

96.     The University failed to either consider or hire Ms. Hwang for these positions in retaliation for filing a disability discrimination claim with The University EEO.

97.     In its actions described above, The University retaliated against Ms. Hwang all in violation of the RA.

## **DISPARATE TREATMENT**

98.     The University violated the RA when it treated Ms. Hwang in a less favorable manner than similarly situated employees who were not disabled.

99.     Ms. Hwang was denied extended leave and forced to resign.

100.    Similarly situated employees who are not disabled are routinely allowed to take leave in excess of six months for various reasons.

101.    University policy allows for sabbatical leave for a period of up to one year, and had granted such leave to its non-disabled employees in the past.

102.    The University Policy allows for shared leave without pay for up to six months.

103.    These employees are not forced to resign.

104.    The University arbitrarily cancelled Ms. Hwang's health insurance.

105.    Similarly situated employees who are not disabled do not have their health insurance cancelled without notice or cause.

106.    Ms. Hwang was denied COBRA benefits and shared leave.

107.    Similarly situated employees who are not disabled are routinely offered these benefits.

108.    In its actions described above, The University retaliated against Ms. Hwang all in violation of the RA.

109.   All of The University's intentional and illegal actions described in this complaint are in violation of the RA.

110.   As a direct result of these violations, Ms. Hwang has been injured.

111.   The University's actions as set out above were intentional, malicious and committed with reckless indifference to Ms. Hwang's rights.

112.   As a direct and proximate cause of The University's acts and omissions as alleged above, Ms. Hwang has suffered severe mental, emotional, and physical distress, lost employment, lost wages, lost fringe benefits, lost earning capacity and has incurred expenses that would not otherwise have been incurred.

## RELIEF REQUESTED

Therefore, Ms. Hwang respectfully requests that this Court assume jurisdiction of this action and after jury trial:

113.   Issue a declaratory judgment that the employment policies and practices, conditions, and customs of the Defendant violated the rights of the Plaintiff as secured by section 504 of the RA;

114.   Issue an injunction, against The University, requiring it to cease its illegal actions and grant Ms. Hwang reinstatement to her position with restored benefits and seniority, and;

115.   Enter judgment against The University for damages consisting of past and future economic loss; compensatory damages for physical and emotional pain and suffering, humiliation and loss of enjoyment of life; award of reasonable attorneys' fees and litigation costs; and for such further legal and equitable relief as the court deems proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the Plaintiff requests a trial by jury on all claims.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that Topeka, Kansas, be designated as the place of trial in the above captioned matter.

Dated this 5th day of April, 2012.

**Respectfully submitted,**
**LEEDS LAW, LLC**

By: s/Luanne Leeds
**LUANNE LEEDS,** #22774
515 SW Horne, Suite 201
Topeka, KS 66606
(785) 354-0727
FAX (785) 354-0736
leedslua@gmail.com
Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on the 5th day of April, 2012, the above and foregoing was electronically filed with the clerk of the court by using the CM-ECF system, which will send notice of electronic filing to the following:

Peter J. Paukstelis, #17482
petepauk@ksu.edu
Attorney for Defendant Kansas State University

M.J. Willboughby, #14059
MJ.Willoughby@ksag.org
Attorney for Defendant The State of Kansas

s/Luanne Leeds
**LUANNE LEEDS,** #22774