# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GRACE HWANG,

    *Plaintiff,*

v.

    Case No.  11-4185-EFM

KANSAS STATE UNIVERSITY,

    *Defendant.*

## MEMORANDUM AND ORDER

      Defendant Kansas State University brings this motion to dismiss Plaintiff Grace Hwang's lawsuit alleging violations of the Rehabilitation Act of 1973.[1]  Hwang argues that KSU discriminated against her by forcing her to resign following a bone marrow transplant and then retaliated against her when she filed a grievance claim.  KSU moves to dismiss the amended complaint on the grounds that Hwang failed to state a claim upon which relief can be granted.  Although the Court is sympathetic to Hwang's misfortunes, the Court finds that she has failed to allege sufficient facts to maintain any of her claims against KSU and, therefore, grants the motion to dismiss.

---

    [1]    29 U.S.C. § 794 *et seq*.

## I. Factual and Procedural Background

Plaintiff Grace Hwang was employed as a professor at Defendant Kansas State University from 1994 until February 2010. Hwang was a Fulbright Scholar who graduated from KSU and also received a graduate degree at Tufts University and a law degree from Georgetown University Law Center. In the fall of 1994, Hwang began serving as an adjunct professor in KSU's MBA program. In 2005, she was elevated to an assistant professor in KSU's School of Leadership Studies. Hwang was employed through a year-to-year contract, although she alleges that it was the policy and practice of KSU to renew such contracts as a matter of course, absent reason to discharge the employee for cause. Hwang asserts that, while employed at KSU, she continuously received praise and positive evaluations from her supervisors and students, and that she maintained a favorable reputation on campus.

In 2005, Hwang underwent surgery, chemotherapy, and radiation treatment for breast cancer. She missed less than three weeks of work due to her illness, and subsequently returned to teach her full load of classes.

On June 23, 2009, Hwang again became ill and was diagnosed with leukemia. She was told that her survival depended on an aggressive course of chemotherapy and a bone marrow transplant. Hwang immediately received a bone marrow transplant from her brother. After the transplant, Hwang's immune system was compromised and she was still undergoing chemotherapy treatment. She therefore spent three months at the KU Medical Center, followed by three months at Hope Lodge, an inpatient cancer facility.

At the time she sought treatment for leukemia, Hwang had accumulated approximately two months of leave and intended to apply that time to her treatment-induced absence. Additionally, coworkers offered to donate their accumulated leave through KSU's shared leave

program, which is governed by state regulations.[2]  Hwang applied for, and received, six months of paid leave through KSU's shared leave program.[3]  Pursuant to state regulation, the maximum amount of shared leave that an employee may use "shall be the total hours that the employee would regularly be scheduled to work during a six-month period."[4]

Hwang had advised her supervisor, Dr. Mary Tolar, and KSU of her diagnosis and need for medical leave.  Hwang alleges that she explained her plan to use all of her accumulated leave and the shared leave program to cover the period she would be absent.  During that period, two substitute teachers covered Hwang's three assigned classes.  Hwang prepared the substitutes and shared her teaching materials, lesson plans, and syllibi.  She also consulted with the substitutes through phone calls and e-mails while she was hospitalized.

Hwang was released from inpatient care on November 21, 2009.  Due to a severe outbreak of the H1N1 virus at KSU, Hwang's physicians advised that she stay away from the campus to protect her compromised immune system.  Hwang informed KSU and Dr. Tolar that she would be taking additional leave, perhaps through the end of the spring semester, but that she intended to teach the online course she had taught for the past three summers.  Hwang assumed this additional leave would not present a problem because the business manager of Hwang's department, Monica Strathman, allegedly informed Hwang that one year of shared leave was available.

---

[2] *See* K.A.R. 1-9-23.

[3] It is unclear from the pleadings when Hwang's own leave was exhausted.  Hwang's amended complaint states, "Her accumulated leave would be exhausted sometime in December . . . ."  Am. Compl., Doc. 20, at ¶ 25.  December 2009, however, marked six months after Hwang's diagnosis, not the two months Hwang had apparently accumulated on her own.  Regardless, it is undisputed that the combination of Hwang's leave and the approved shared leave expired in February 2010.  *See* E-mail to Hwang dated 2/19/10, Doc. 22-2, at 2.

[4] K.A.R. 1-23-9(g)(1).

In December 2009, KSU's Human Resources Department contacted Hwang and advised her to apply for long term disability benefits ("LTD") available through the Kansas Public Employees Retirement System ("KPERS"). Hwang believed that HR was telling her to apply for LTD to insure that she would continue to receive benefits in the event she was unable to return by the summer of 2010. On February 10, 2010, Stephanie Harvey, a human resources employee, called Hwang to inform her that she was approved for LTD and would begin receiving benefits on February 17, 2010, and that she would be responsible for paying her own health insurance premium of $1,340 per month. Harvey informed Hwang that, by accepting LTD, Hwang would be forced to resign and her position with KSU would be terminated.

The following day, Hwang e-mailed Dr. Tolar expressing surprise and consternation at the news that she would be forced to resign as a condition of receiving LTD benefits. In the e-mail, Hwang expressing a desire to return to her position, asked: "So I guess my question is whether this is all true or whether we can label my absence this semester as 'Leave without Pay' or something else, so I don't have to go through re-applying for my old job back, for lower pay."[5]

By return e-mail dated February 19, 2010, Dr. Tolar confirmed the information that Harvey had relayed to Hwang on February 11. Dr. Tolar's e-mail stated that Hwang's options were either (1) "LTD includ[ing] 60% of your salary plus benefits for as long as you need them (through retirement age)," or (2) a continued leave of absence without pay.[6] Dr. Tolar warned Hwang that the following conditions would apply to an unpaid leave of absence:

---

[5] *See* E-mail to Tolar dated 2/11/10, Doc. 22-1, at 2.

[6] E-mail to Hwang dated 2/19/10, Doc. 22-2, at 3.

> [B]ecause you are a term employee, you have no contractual rights beyond June 12, 2010. Therefore, if you were to continue on leave without pay, you would have no LTD benefits and your employment would end on the last day of your contract, June 12, 2010, pursuant to the terms of your contract. Further, you would be responsible for paying your own health insurance premiums beginning immediately, as your shared leave has been exhausted as of today's date.[7]

Dr. Tolar then informed Hwang that she had to make a decision immediately because Hwang's shared leave would end the following day.

Hwang, a single mother of two, responded, "I don't really have many choices here. So the Long-Term Disability is what I will proceed with."[8] Hwang also expressed a desire to return to teaching, and said that she would speak with her doctors about moving up the date she would be available to return. Hwang was notified by a letter from Harvey that her effective date of termination from KSU was February 21, 2010.

On March 1, 2010, Hwang attempted to receive scheduled chemotherapy, but was informed that KSU had cancelled her medical insurance. Hwang contends that she was never told that her insurance would be cancelled, nor was she made aware of her COBRA rights. Hwang's physician, Dr. McGuirk, wrote to Dr. Tolar and informed her of the hardship KSU had created by cancelling Hwang's medical insurance, and that Hwang would be able to return to teaching for the summer session.

On March 2, 2010, Hwang applied for a position at KSU as a special assistant to the president for community relations. KSU hired a candidate from Colorado without interviewing Hwang.

---

[7] *Id.*

[8] E-mail to Tolar dated 2/20/10, Doc. 22-3, at 2.

On March 8, 2010, Hwang filed an internal disability discrimination complaint against KSU and initiated the grievance process. After a formal hearing, KSU informed Hwang on May 18, 2010, that the university had considered her complaint, but concluded that no discrimination occurred and they would take no further action.

On June 24, 2011, Hwang applied to KSU for a position as Interim Associate Provost for International Programs. KSU hired another candidate without interviewing Hwang. In October 2011, Hwang applied for an adjunct position in the Department of American Ethnic Studies. The position is for a single semester and pays $3,000 and does not include any benefits. Hwang was selected to fill the position by the director of the department, but at the time of her initial complaint, the dean of the university had not approved her selection.

Hwang initiated this lawsuit in federal court on December 15, 2011, alleging that her treatment violated § 504 of the Rehabilitation Act of 1973 ("RA").[9] Her initial complaint levied charges against both KSU and the State of Kansas, but in an amended complaint dated April 5, 2012, Hwang removed the State of Kansas from the list of parties to the suit. Hwang asserts four causes of action against KSU: (1) discrimination, (2) failure to accommodate, (3) retaliation, and (4) disparate treatment. First, Hwang contends that she was discriminated against on the basis of her disability when KSU denied her COBRA benefits, denied her shared leave for the whole of her absence, and failed to consider Hwang for other positions at KSU. Second, Hwang alleges that KSU failed to accommodate Hwang's disability by either awarding her shared leave for her extended absence or offering another accommodation that would permit Hwang to retain her position. Third, Hwang argues that KSU retaliated against her because after she asserted her

---

[9] 29 U.S.C. § 794.

rights under the RA, KSU refused to consider Hwang for vacant positions at the university that she was qualified to fill. Fourth, Hwang claims that she was subject to disparate treatment because other, similarly-situated employees are routinely allowed to take leave in excess of six months without consequence and do not have their health insurance cancelled without notice or cause.

Hwang requests from the Court (1) declaratory judgment that KSU's employment policies and practices violate RA § 504, (2) an injunction requiring KSU to cease illegal actions and reinstate Hwang to her previous position with restored benefits and seniority, and (3) entry of judgment awarding Hwang monetary relief for economic loss, pain and suffering, and attorneys' fees and costs.

KSU now moves to dismiss Hwang's amended complaint on numerous grounds. First, KSU argues that Hwang has failed to state a claim under the RA because KSU did not take any adverse action against her, she is not "otherwise qualified" to perform the essential functions of her job, and she did not request an accommodation. Second, KSU argues that Hwang's claims should have been brought under the Kansas Judicial Review Act rather than § 504 of the RA. Third, KSU argues that Hwang failed to state a failure-to-hire claim under the RA regarding the positions she subsequently applied for at the university. Fourth, KSU claims that Hwang's claims of disparate treatment are composed solely of conclusory allegations and are not plausible. Finally, KSU references a brief filed by the State of Kansas, a party that has since been terminated from the case, and alleges that KSU is entitled to sovereign immunity.

## II. Legal Standards

### A. Standard for Dismissal under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[10] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[13] Under 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[14] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[15] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[16]

---

[10] Fed. R. Civ. P. 12(b)(6).

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 566 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678–79.

[15] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Citation omitted)).

[16] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 566 U.S. at 570).

**B. Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[17] Section 504 explicitly applies to termination, right of return from layoff and rehiring, leaves of absence, and benefits available through employment.[18] The RA generally adopts the standards of the Americans with Disabilities Act (ADA)[19] for claims of employment discrimination.[20] To state a claim under § 504, then, a plaintiff must allege sufficient facts to prove the following: (1) she is disabled under the RA; (2) she is "otherwise qualified" to perform, with or without reasonable accommodation, the essential functions of her position; (3) she was discriminated against solely by reason of her disability; and (4) the program or activity in question receives federal financial assistance.[21] KSU does not dispute Hwang's contention that she is disabled under the RA or that KSU is a program receiving federal financial assistance. Instead, KSU alleges that Hwang has not alleged facts sufficient to show that she is "otherwise qualified" or that KSU discriminated against her on the basis of her disability.

---

[17] 29 U.S.C. § 794(a).

[18] 45 C.F.R. § 84.11(b).

[19] 42 U.S.C. §§ 1211 *et seq*.

[20] 29 U.S.C. § 794(d).

[21] *See Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (citation omitted).

### III. Analysis

**A. KSU is not entitled to sovereign immunity on all claims.**

Federal courts are courts of limited jurisdiction, and must have a statutory or constitutional basis to exercise jurisdiction.[22] Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for the dismissal of any claim over which the court lacks jurisdiction. The Eleventh Amendment bars private citizens from bringing suit against a state in federal court, unless the state waives or Congress unequivocally abrogates the state's immunity.[23] The Eleventh Amendment, therefore, acts a jurisdictional bar prohibiting a federal court from hearing claims against a party immune from suit.[24]

KSU incorporates by reference the arguments advanced by the State of Kansas in its motion to dismiss Hwang's claims against the State. The State argued that it had not waived its Eleventh Amendment immunity from suit with respect to § 504 of the RA. Assuming without deciding that KSU is entitled to Eleventh Amendment immunity,[25] this Court would be deprived

---

[22] *See* U.S. Const. art. III; *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850).

[23] *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, (1890) (interpreting the Eleventh Amendment as implicitly recognizing the doctrine of sovereign immunity, and also barring suits against a state by the state's own citizen); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).

[24] *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that a party could raise an Eleventh Amendment defense on appeal because the defense "sufficiently partakes of the nature of a jurisdictional bar").

[25] In *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), the Supreme Court held that § 504 did not contain an explicit waiver of Eleventh Amendment immunity sufficient to subject states to suit in federal courts. Congress subsequently amended the Act to include what it intended to be a clear statement waiving the states' sovereign immunity from suits brought under § 504. *See* 42 U.S.C. § 2000d-7(a)(1). Citing language from the Supreme Court in the subsequent case of *Lane v. Pena*, 518 U.S. 187, 198 (1996), the Tenth Circuit held that states and state entities—such as state universities—that accept federal monies enumerated under 42 U.S.C. § 2000d-7 waive sovereign immunity from suit. *See Robinson v. Kansas*, 295 F.3d 1183, 1189–90 (10th Cir. 2002), *abrogated on other grounds by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159 (10th Cir. 2012); *see also Brockman v. Wyoming Dep't of Family Servs.*, 342 F.3d 1159, 1168. The Court, however, recognizes that application of the foregoing case law to the differing sovereign immunities of the federal and state governments has not been thoroughly explored within the district. *Compare Thomas v. Kan. Social and Rehabilitation Servs.*, No. 10-4154-

of jurisdiction only with respect to Hwang's claims for monetary relief, not future injunctive relief.[26] Therefore, the Court must still decide whether Hwang's complaint is subject to dismissal under Rule 12(b)(6).

**B.   Hwang failed to allege facts sufficient to show violations of the RA.**

Although the Court is sympathetic to Hwang's unfortunate circumstances, the Court agrees with KSU that Hwang has failed to allege the existence of sufficient facts to show that she is entitled to any relief from the university. The Court will address each charge from the amended complaint in turn.

   *1.   Charge I: Discrimination*

Hwang first claims that KSU discriminated against her in violation of § 504 of the RA when it denied her COBRA benefits, denied her participation in the University's shared leave program, and failed to consider or hire Hwang for the positions she applied for in 2010. None of these claims can survive KSU's motion to dismiss for failure to state a claim.

First, Hwang has not pleaded facts sufficient to show that KSU denied Hwang COBRA benefits as a result of Hwang's disability. Other than her conclusory allegation that KSU denied COBRA benefits due to Hwang's disability, Hwang has not provided any detail about the termination of her medical insurance. From the record, it appears Hwang was informed that acceptance of LTD benefits would require her to pay her own insurance premiums to maintain

---

JTM, 2012 WL 1034939 (D. Kan. Mar. 27, 2012) (relying on Tenth Circuit case law to hold that the Eleventh Amendment did not bar a claim against a state entity under § 504 of the Rehabilitation Act), *with Sanders v. Shinseki*, No. 11-4179-JTM, 2012 WL 5985469 (D. Kan. Nov. 29, 2012) (citing the Supreme Court's decision in *Lane* and concluding that the court would "follow U.S. Supreme Court precedent in holding that Congress did not waive the *federal* government's sovereign immunity for monetary damages in Section 504 claims" (emphasis added)). Therefore, the Court will leave the issue of sovereign immunity for another day.

[26]   *See generally Ex parte Young*, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state actors for injunctive relief because preventing a state official from performing allegedly illegal acts does not infringe upon a state's sovereignty).

insurance. Therefore, the Court must assume that any denial of COBRA benefits was not an act of discrimination, but merely the result of Hwang's decision to accept LTD benefits.

Second, KSU's decision to not award shared leave in excess of six months was not an act of discrimination, but compliance with state regulations.[27] To the extent that Hwang is alleging the state regulation limiting participation in the shared leave program violates § 504, the Court finds such argument without merit. In *Alexander v. Choate*, the Supreme Court was asked to determine whether a state violated § 504 of the Rehabilitation Act when it reduced the number of days of inpatient hospital care that would be covered by Medicaid from twenty to fourteen.[28] The Court began its analysis by recognizing the important, yet competing, interests implicated under § 504: the statutory objective of prohibiting discrimination against the handicapped and the need "to keep § 504 within manageable bounds."[29] Appealing to both of these interests, the Court found that § 504 guarantees disabled individuals "meaningful access to the benefit that the grantee offers," but that the state's reduction in Medicaid benefits did not deny meaningful access to Medicaid services.[30] The Court noted that the reduction was neutral on its face, and did not work "a particular exclusionary effect on the handicapped."[31]

In the case presently before this Court, there is nothing in the pleadings to suggest that Kansas Administrative Regulation 1-23-9(g)(1) denies disabled individuals meaningful access to the shared leave program. The limitation on participation in the program is facially neutral and

---

[27] *See* K.A.R. 1-23-9(g)(1).

[28] 469 U.S. 287, 289 (1985).

[29] *Id.* at 299.

[30] *Id.* at 301–02.

[31] *Id.* at 302.

Hwang has not alleged the existence of any facts showing the limitation has a particularly exclusionary effect on disabled individuals. Therefore, Hwang cannot claim KSU violated § 504 when it denied her further participation in the shared leave program.

Finally, Hwang has failed to allege sufficient facts to show KSU discriminated against her based on her disability when it declined to hire her for the positions she applied for in 2010. Turning first to the position of special assistant to the president for community relations, Hwang alleges the following facts: (1) she was qualified for the position, (2) she was not interviewed, and (3) KSU hired a candidate from Colorado without considering Hwang. With respect to the position of Interim Associate Provost for International Programs, Hwang alleges: (1) she was qualified for the position, (2) she was not interviewed, and (3) KSU appointed another candidate without considering Hwang's application. Even after affording these facts the presumption of truth, they are insufficient to establish discrimination in either instance. There are numerous reasons independent of her disability that KSU may have declined to consider Hwang for these positions. A mere possibility of illegal conduct is insufficient to meet the pleading requirements announced in *Ashcroft v. Iqbal*.[32] Therefore, Hwang's claims of discriminatory hiring in violation of § 504 must be dismissed for failure to state a claim.

### 2. *Charge II: Failure to Accommodate*

In her second charge, Hwang alleges that KSU violated § 504 of the RA when it failed to accommodate her disability by (1) denying Hwang's request for extended leave and (2) "fail[ing]

---

[32] 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'").

to consider any other accommodation and fail[ing] to engage in the interactive process."[33] Neither of these allegations can support a claim for failure to accommodate. As previously stated, KSU was complying with state regulations when it denied Hwang's request to participated in the shared leave program after she exhausted six months' worth of leave, and there is no evidence that the six-month limitation on shared leave violates § 504. Furthermore, because Hwang bears the initial burden of proving that an accommodation is reasonable,[34] she cannot prove a violation of § 504 by alleging that KSU failed to consider unspecified accommodations.[35] A claim is not plausible on its face if the complainant cannot even articulate the illegal conduct. Therefore, Hwang's claim for failure to accommodate must be dismissed for failure to state a claim upon which relief can be granted.

   3.   *Charge III: Retaliation*

Hwang's third claim against KSU argues that KSU retaliated against Hwang when it denied Hwang COBRA benefits and extended shared-leave, and when it failed to interview or hire Hwang for the positions she applied for with the university. Hwang bears the burden of establishing a prima facie case of retaliation.[36] To do so, Hwang must show that (1) she engaged in protected action in opposition to discrimination, (2) a reasonable employee would find the

---

[33] Am. Compl., Doc. 20, at ¶ 85. The Court is unclear about "the interactive process" cited by Hwang. Absent more facts, the Court will not assume that this process is a particular accommodation.

[34] *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002); *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004).

[35] Hwang mentions that KSU has a policy of granting year-long sabbaticals in her fourth claim of disparate treatment, but does not allege that she ever proposed this solution as a reasonable accommodation. *See* Am. Compl., Doc. 20, at ¶ 101. Furthermore, KSU's response claims that sabbatical was not available to non-tenured professors like Hwang. *See* Def. Resp., Doc. 22, at 18.

[36] *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

KSU's challenged action to be materially adverse, and (3) a causal connection existed between Hwang's protected opposition and KSU's materially adverse action.[37]

With respect to Hwang's claim that KSU denied benefits and leave as a retaliatory act, the Court is not convinced that Hwang's e-mail to Dr. Tolar asking for clarification about the university's LTD policies constituted protected opposition to discrimination. KSU's suggestion that Hwang apply for LTD benefits was not an act of discrimination, and Hwang's e-mail reads more like a request for clarification than a formal complaint. Even if Hwang did meet her burden of establishing the first and second elements of a retaliation claim, she has not alleged facts sufficient to establish a causal connection between Hwang's e-mails and the alleged cancellation/denial of her benefits and leave. According to KSU, those consequences were a result of Hwang's acceptance of LTD benefits and not any action taken by the university. Hwang has not alleged any facts showing that KSU's explanation is pretextual.

Turning to Hwang's claim that she was denied interviews and employment as a result of the internal grievance procedure she initiated, she has again failed to establish a prima facie claim of retaliation. First, with respect to the community relations position, Hwang did not allege any facts that suggest a causal relationship between her initiation of a grievance claim and KSU's failure to interview or hire her. Second, Hwang has not alleged any facts to establish a causal connection between KSU's decision to not interview or hire Hwang for the associate provost position. Although temporal proximity may be sufficient to infer a retaliatory motive, the Tenth Circuit has stated that the adverse action must be "*very closely* connected in time to the

---

[37] *See Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009).

protected activity."[38] For example, an intervening period of three months, standing alone, was found to be insufficient to establish a prima facie case of causation.[39] Here, Hwang submitted her grievance claim on March 8, 2010, and did not apply for the associate provost position until June 24, 2011. This intervening period of more than fourteen months, standing alone, is insufficient to support Hwang's claim of retaliation. Therefore, Hwang's retaliation claim must be dismissed under Rule 12(b)(6) for failure to state a claim.

### 4. Charge IV: Disparate Treatment

Finally, Hwang claims that KSU engaged in disparate treatment on the basis of disability. Hwang alleges that she was treated differently than similarly situated, nondisabled individuals with respect to leave, benefits, forced resignation, and participation in the university's sabbatical program. Hwang offers no detail as to the facts underlying these comparisons, and therefore fails to show any disparate treatment.

First, Hwang states that "[s]imilarly situated employees who are not disabled are routinely allowed to take leave in excess of six months for various reasons."[40] Hwang, too, was allowed to take unpaid leave in excess of six months, but she instead *chose* to accept LTD benefits. Second, Hwang mentions the university's sabbatical program, but does not allege that nondisabled, *non-tenured* professors like herself were permitted to take sabbaticals. Third, Hwang states that "[s]imilarly situated employees who are not disabled do not have their health insurance cancelled without notice or cause."[41] But Hwang's complaint admits that she was told

---

[38] *Anderson*, 181 F.3d at 1179.

[39] *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

[40] Am. Compl., Doc. 20, at ¶ 100.

[41] *Id.* at ¶ 105.

that she would be responsible for her own health insurance premiums if she accepted LTD benefits. Fourth, Hwang asserts that nondisabled employees are "routinely offered" COBRA benefits and shared leave. Hwang did participate in KSU's shared leave plan for the maximum amount of time permitted under Kansas law. And Hwang has not alleged facts showing that nondisabled employees who participate in COBRA are treated disparately from disabled employees who accept LTD benefits. Therefore, Hwang cannot sustain her claim of disparate treatment.

In conclusion, Hwang has failed to allege facts sufficient to show a plausible claim for relief. Because Hwang has failed to state a claim upon which relief can be granted, her First Amended Complaint must be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS ACCORDINGLY ORDERED** this 28th day of February, 2013, that Defendant's Second Motion to Dismiss (Doc. 21) is hereby **GRANTED**.

**IT IS ALSO ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is hereby **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Eric F. Melgren
United States District Judge